**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAN A. IZZI,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-0195** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**July 29, 2005**

    **I.**      **Introduction**

      Plaintiff Dan A. Izzi brings this action pursuant to 42 U.S.C. § 405(g) of the Social

Security Act ("Act"), seeking review of the final determination of the Commissioner of Social

Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB").

Consistent with the customary practice in the Western District of Pennsylvania, the parties have

submitted cross motions for summary judgment and the record developed at the administrative

proceedings.

      After careful consideration of the Administrative Law Judge's ("ALJ") Decision, the

memoranda of the parties, and the entire record, the Court finds the ALJ's decision is supported

by substantial evidence, and therefore will grant Commissioner's motion for summary judgment

and deny plaintiff's motion for summary judgment.

    **II.**      **Procedural History**

      This is an appeal under 42 U.S.C. § 405(g) of a final administrative decision of the

Commissioner of Social Security, which denied plaintiff DIB under Title II of the Social

Security Act.  R. 17.  Plaintiff applied for DIB on June 30, 2003, and the Social Security

Administration denied plaintiff's application.  R. 78.  Plaintiff appealed, and a hearing was held

before an ALJ Donald T.  McDougall on May 17, 2004, in Morgantown, West Virginia, where

plaintiff and Timothy Mahler, an impartial vocational expert ("VE"), testified.  R. 39-75.  The

ALJ denied plaintiff's claim on September 7, 2004, finding that plaintiff retained the residual

functional capacity ("RFC") to perform his past work as regional administrative supervisor.  R.

14.  The Appeals Council denied plaintiff's request for review of the ALJ's decision on January

28, 2005.  R. 5.  Having exhausted all administrative remedies, plaintiff timely filed this action.

### III.    Statement of the Case

A.  <u>Factual Background</u>

Plaintiff, born on December 6, 1944, was 59 years old at the time of the administrative

hearing, making him a person of "advanced age."  20 C.F.R. § 404.1569.  After graduating from

high school, plaintiff was employed at Allegheny Power, first as a coal foreman, and was later

promoted to regional administrative supervisor.  R. 17, 40-42, 122, 125.  Plaintiff held the

position of regional administrative supervisor, classified by the VE as "sedentary, skilled work,"

for twelve years.  R. 53, 70, 125.  In 2002, plaintiff voluntarily took an early retirement from

Allegheny Power because the company was downsizing and he did not want to risk reduction of

his pension.  R. 41-44.

Plaintiff alleges that "degenerative disc disease of the lumbar spine with severe pain and

periodic spasms, a history of kidney cancer status post removal of one kidney and prostate

cancer" rendered him disabled on October 1, 2002.  R. 18.  Specifically, plaintiff's alleged

disability stems from a January 15, 1979, work-related back injury.  R. 230.  Dr. Miller

performed surgery and excised a lumbar disk in plaintiff's back shortly after the injury.  R. 116, 162.  Since then, Plaintiff has endured "chronic low back pain."  R. 181.  The next known examination of plaintiff's back took place on April 23, 1993, by Dr. Gregg O'Malley, M.D..  R. 162.  Plaintiff requested that Dr. O'Malley focus on his left leg and back during the examination because of pain in these regions.  R. 162.  Dr. O'Malley diagnosed Plaintiff with mild persistent sciatica which did not require surgery or epidural injections.  R. 162.

In 2001, plaintiff was referred to Dr. Shirish Desai, M.D., by plaintiff's primary care physician, Dr. Niranjan Dixit, M.D., after a cystoscopy, IVP, CT scan, and bone scan revealed a prostatic enlargement and a large renal mass on plaintiff's right kidney.  R. 152.  Dr. Desai removed plaintiff's malignant right kidney on March 8, 2001.  R. 152-3.  The postoperative examination on July 26, 2001 found plaintiff to be asymptomatic and "doing well."  R. 200.

Plaintiff returned to Dr. O'Malley on February 19, 2002 for relief from pain in his left sciatic distribution.  R. 159.  Dr. O'Malley again diagnosed plaintiff with "relatively mild" sciatica and suggested numerous treatment options for plaintiff which ranged from "live with [the pain]" to epidural steroid injections to repeat surgery.  R. 159.  Plaintiff chose a non-steroidal treatment option to manage his pain.  R.159.

On June 26, 2003, "arachoniditis type symptoms in the left buttock and primarily down the left leg" brought plaintiff back to Dr. O'Malley's office.  R. 158.  Dr. O'Malley noted plaintiff's claim that "anything more than nearly sedentary activity really puts him over the edge as far as pain."  R. 158.  Plaintiff told Dr.  O'Malley he intended to file for Social Security Disability.  R. 158.

Dr. Timothy K. Jackson, M.D., was asked by the Pennsylvania Bureau of Disability

Determination to perform an independent medical examination of the plaintiff on August 16, 2003.  R. 163-69, 180.  Dr. Jackson diagnosed plaintiff as "a morbidly obese gentleman with back pain, limitation to left hip, and questionable straight leg raise on the left."  R. 164.  Dr. Jackson found no muscular atrophy.  R. 164.  Additionally, an x-ray revealed mild superior endplate wedging of plaintiff's L3 lumbar disk, which appeared to be old with degenerative changes at the sacroiliac  joint only.  R. 164.  Dr. Jackson's evaluation of plaintiff's ability to perform work-related physical activities included lifting one-hundred pounds occasionally, carrying fifty pounds occasionally, and  standing and walking six or more hours per eight-hour day.  R.168.  No limitations were found regarding Plaintiff's ability to sit, push or pull.  R.168-69.  Dr.  Jackson also found plaintiff able to occasionally engage in postural activities.  R. 169.

State agency physician, Nghia Tran, M.D., performed a RFC assessment on September 9, 2003.  R.172-79, 181-82.  Dr. Tran reviewed all of the medical evidence to date in plaintiff's file, and concluded that Plaintiff could occasionally lift and/or carry up to twenty pounds, frequently lift and/or carry up to ten pounds, stand and/or walk about six hours in an eight-hour work day, and retained unlimited capacity to push and/or pull, and to occasionally perform postural movements.  R.173-74.  Dr. Tran concluded that based on all evidence on record, "the claimant's statements [regarding his limitations] are found to be partially credible."  R.182.

Plaintiff's orthopedic specialist, Dr.  William J.  Mitchell, M.D., F.A.C.S., prepared a narrative report of plaintiff's medical condition on December 4, 2003.  R.  230-233.  This report discussed his examinations of plaintiff on October 14, October 28, November 2, and December 1, 2003.  R.  230-33.  In Dr.  Mitchell's opinion, the plaintiff "exhibits a multi-level vertebrogenic disorder, characterized by degenerative disc bulging, hypertrophy of the

ligamentum flavum and secondary stenosis.  At this condition it extends from L3 through S1 and

is associated with pain, muscle spasms, significant limitation of motion and radicular

distribution, especially at the L4-5 and L5-S1 levels."  R.  233.

      B.  <u>The ALJ's Findings</u>

      The ALJ made the following findings:

1.     The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.     The claimant's degenerative disc disease of the lumbar spine, loss of one kidney, obesity, and prostate cancer are considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(c).

4.     These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.     The claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the ALJ's decision.

6.     The claimant retains the residual functional capacity to stand/walk up to two hours a day, sit up to six hours a day and lift up to ten pounds.  He is limited nonexertionally in that he must be allowed to change body positions (sit/stand) regularly.

7.     The claimant's past relevant work as regional administrative supervisor did not require the performance of work-related activities precluded by his residual functional capacity (20 C.F.R. § 404.1565).

8.     The claimant's medically determinable impairments do not prevent the claimant from performing his past relevant work.

9.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § 404.1520(f)).

R. 22-23.

C. Issue

The disputed issue in this case is whether there is substantial evidence on the record as a whole to support the Commissioner's findings that plaintiff retains the residual functional capacity to perform his past work as a regional administrative supervisor as he actually performed it, without taking into account reasonable accommodations that could be made to plaintiff's past job.

**IV.  Standard of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under

--------

[1]
Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[2]
Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent and applicable to those rendered under Title XVI. *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the ALJ's decision by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Halter,* 247 F.3d 34, 44 n.7 (3d Cir. 2001)  ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical

evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must

demonstrate an inability to "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant

is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner

utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See*

*Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized

this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is
> currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a
> claimant is found to be engaged in substantial activity, the disability claim will
> be denied. . . . In *step two*, the Commissioner must determine whether the
> claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the
> claimant fails to show that her impairments are "severe", she is ineligible for
> disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the
> claimant's impairment to a list of impairments presumed severe enough to
> preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not
> suffer from a listed impairment or its equivalent, the analysis proceeds to steps
> four and five. *Step four* requires the ALJ to consider whether the claimant
> retains the residual functional capacity to perform her past relevant work. 20
> C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an
> inability to return to her past relevant work. . . .
>
> If the claimant is unable to resume her former occupation, the evaluation
> moves to the final *step* [*five*]. At this stage, the burden of production shifts to the
> Commissioner, who must demonstrate the claimant is capable of performing
> other available work in order to deny a claim of disability. 20 C.F.R. §
> 404.1520(f). The ALJ must show there are other jobs existing in significant
> numbers in the national economy which the claimant can perform, consistent
> with her medical impairments, age, education, past work experience, and

residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59;  *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)(Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A).  In order to prove disability under this second method, claimant first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461;  *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777;  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(B), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523 (2002), Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971).  Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed

11

Impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c) (2002); 20 C.F.R. § 416.929.  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for

such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705.  The United States Court of Appeals for the Third Circuit has stated:  "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  While "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at  1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim*. *See Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.2d 1178, 1184-85 (3d Cir. 1992)

13

(emphasis added), *cert. denied* 507 U.S. 924 (1993).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although ALJ may weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to

remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) and

15

20 C.F.R. §416.927(a-d) (2002)  (consideration and weighing of medical opinions) *with* 20

C.F.R. §404.1527(e) (2002) and 20 C.F.R. §416.927(e) (2002) (distinguishing medical opinions

on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case

record," and states the circumstances in which an opinion of a treating source is entitled to

"controlling weight." 20 C.F.R. § § 404.1527(b), (d) and 416.927(b), (d) (2002).[3]  Medical

opinions on matters reserved for the Commissioner are not entitled to "any special significance,"

although they always must be considered. 20 C.F.R. § § 404.1527 (e)(1-2) and 416.927 (e)(1-2)

(2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation

Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions,"

---

[3]      Subsection (d) states: "How we weigh medical opinions. Regardless of its source,
we will evaluate every medical opinion we receive. Unless we give a treating source's opinion
controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in
deciding the weight we give to any medical opinion." 20 C.F.R. § 404.1527(d) (2002) and §
416.927(d). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these
> sources are likely to be the medical professionals most able to provide a detailed,
> longitudinal picture of your medical impairment(s) and may bring a unique
> perspective to the medical evidence that cannot be obtained from the objective
> medical findings alone or from reports of individual  examinations, such as
> consultative examinations or brief hospitalizations. If we find that a treating
> source's opinion on the issue(s) of the nature and severity of your impairment(s) is
> well-supported by medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other substantial evidence in your case
> record, *we will give it controlling weight*. When we do not give the treating source's
> opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and
> (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6)
> of this section in determining the weight to give the opinion. *We will always give
> good reasons in our notice of determination or decision for the weight we give your
> treating source's opinion*.

20 C.F.R. § § 404.1527(d)(2) and 416.927(d)(2) (2002) (emphasis added).

and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[4] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is

---

[4]     SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

"inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2); 20 C.F.R. § 416.927 (d)(2). *See* note 3, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6); 20 C.F.R. § 416.927 (d)(1-6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(i); 20 C.F.R. § 416.927 (f)(2)(i). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## V.    Discussion

Neither the Commissioner nor Plaintiff dispute steps one thru three of the five-step process as (1) plaintiff has not engaged in substantial gainful activity since his alleged disability onset date; (2) plaintiff's "degenerative disc disease of the lumbar spine, loss of one kidney, obesity, and prostate cancer", when considered together, qualify as "severe" impairments under 20 C.F.R. § 404.1520(c); and (3) plaintiff's impairments, although severe, do not reach the level of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.  R. 18.  The dispute arises at step four of the sequential process as to whether, after considering all impairments and determining the plaintiff's RFC, the plaintiff is able to perform his past relevant work as a regional administrative supervisor.  R. 19.  *See* 20 C.F.R. § 404.1520(e).

### A. Determining Past Relevant Work

Regulations define past relevant work as work that plaintiff has performed within the past 15 years that lasted long enough for plaintiff to learn the job and meet the definition of substantial gainful activity.  *See* C.F.R. § 404.1565(a).  Plaintiff held the position of regional administrative supervisor from 1990-2002, affording him time to learn the job and hold the job as substantial gainful activity, thus qualifying as past relevant work for DIB purposes.  R. 125.

### B. Determining Residual Functional Capacity

Once plaintiff's past relevant work was established, the ALJ determined plaintiff's RFC to be at the sedentary level.  R. 21.  *See* 20 C.F.R. § 404.1545.  The Regulations, 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c), define RFC as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs."  To reach this conclusion, the ALJ analyzed and weighed all relevant evidence in the record

19

(including plaintiff's symptoms, daily activities and opinions of all medical professionals) and determined that the plaintiff, despite his impairments, has a "maximum exertional capacity for only sedentary work." R. 21.

Although a treating physician's assessment is entitled to substantial deference, it is ultimately the ALJ's decision as to whether or not the plaintiff is disabled for DIB purposes as this is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e). Plaintiff's treating physician, Dr. Mitchell, stated, "In my opinion [the plaintiff's] condition is permanent and it renders Mr. Izzi unable to engage in work activity on a regular and continuing bases." R. 233. The ALJ is under an obligation to weigh Dr. Mitchell's opinion against all other evidence on the record, but he need not accept it when it is contradicted by other medical evidence and he explains why he rejects the treating physician's opinion. *Adorno*, 40 F.3d at 48.

The ALJ rejected Dr. Mitchell's position regarding plaintiff's ability to work and appropriately explained the rationale behind his decision with well-supported evidence. R. 19-22. *See* SSR 96-2p. These included inconsistencies within Dr. Mitchell's own treatment notes, with the findings of the state agency medical consultants, plaintiff's activities such as "trim(ing) the law and do(ing) minor household repairs," and the fact that plaintiff received "no substantiated treatment from the alleged onset date until June 2003 when he complained of some intermittent low back pain and reported that his principal problem was leg pain." R. 20. The treating physician's opinions were accounted for, given proper weight, and subsequently rejected by the ALJ in an appropriate manner regarding plaintiff's ability to work. R. 21.

C. Determining Plaintiff's Ability to Return to Past Relevant Work

Finally, the ALJ determined that the Plaintiff was able to perform his past relevant work

as a regional administrative supervisor based upon his RFC of sedentary exertion.  R. 22.  The Regulation states, "if we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled."  20 C.F.R. § 404.1560.  The VE found that plaintiff's job as a regional administrative supervisor "would be classified as sedentary, skilled work."  R. 70.  He further testified that plaintiff could return to his past relevant work as regional administrative supervisor as performed by plaintiff notwithstanding his limitations, as plaintiff's employer had afforded great flexibility.  R. 72.

Under the three possible tests for determining whether an individual can perform his past relevant work,[5] plaintiff "has the capacity to perform the functional demands and job duties peculiar to the individual job as (he) actually performed it."  R. 22.  Plaintiff's former job as regional administrative supervisor as he performed it entailed sedentary exertion and allowed flexibility to move about as desired.  R. 22.  Plaintiff himself stated,  "The job that I had was probably ideal for ... my condition, and I had [an] extreme amount of flexibility as administrative supervisor... I had a bad day, I could, I could leave ... make that time up on a better day.  It was just ideal."  R. 41.

Plaintiff argues that the ALJ improperly took accommodations that plaintiff's employer afforded him into account when determining plaintiff's DIB.  Plaintiff cites to *Cleveland v. Policy Managment Systems, Corp.*, 526 U.S. 795 (1999), a case that distinguishes the use of

---

[5] The three tests listed under SSR 82-61 are: (1) Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job; (2) Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it; and (3) Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy.

accommodations when determining Americans with Disability Act claims versus Social Security

DIB claim determinations, which cannot take into account reasonable employer

accommodations.  The Supreme Court stated:

> When the Social Security Administration (SSA) determines
> whether an individual is disabled for Social Security Disability
> Insurance (SSDI) purposes, it does not take the possibility of
> 'reasonable accommodation' into account, nor need an applicant
> refer to the possibility of reasonable accommodation when she
> applies for SSDI. The omission reflects the facts that the SSA
> receives more than 2.5 million claims for disability benefits each
> year; its administrative resources are limited; the matter of
> 'reasonable accommodation' may turn on highly disputed
> workplace-specific matters; and an SSA misjudgment about that
> detailed, and often fact-specific matter would deprive a seriously
> disabled person of critical financial support.

*Cleveland*, 526 U.S. at 803.

_____Although plaintiff points to *Cleveland* in his argument, he presents no specific evidence

that indicates accommodations were taken into account by the ALJ when determining plaintiff's

disability.  The test used by the ALJ was whether or not the plaintiff retains the capabilities to

perform his past work as he performed it, which included the flexibility plaintiff's employer

permitted.  Because plaintiff could return to his past job as regional administrative supervisor,[6]

the five-step sequential inquiry into disability determination ends and there is no need to

determine whether or not there are jobs in significant number in the national economy that

plaintiff can perform.

---

[6] It also seems that based on the VE testimony, plaintiff retained the ability to perform his
past relevant work of a coal foreman.  After hearing the job description of coal foreman by the
plaintiff, the VE responded that "for the five minutes just getting out of the truck walking
around, he could do that job too with your limitations."  R.  75.

22

**VI.  Conclusion**

Having reviewed the ALJ's findings of fact and decision, this Court determines that the decision is supported by substantial evidence and the Plaintiff is capable of performing his past work as regional administrator as he actually performed it.  Accordingly, the Court will grant Commissioner's motion for summary judgment and deny plaintiff's motion for summary judgment.

An appropriate order will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: all counsel of record

Gregory G. Paul, Esquire
Peirce Law Offices
707 Grant Street
2500 Gulf Tower
Pittsburgh, PA 15219

Lee J. Karl, Esquire
United States Attorney's Office
700 Grant Street
Suite 400
Pittsburgh, PA 15219

23